UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

| | | |
|---|---|---|
| STEPHEN CORBEZZOLO, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) ) | CLASS ACTION |
| vs. | ) ) ) | |
| MGP INGREDIENTS, INC., AUGUSTUS C. GRIFFIN and BRANDON M. GALL, | ) ) ) | |
| Defendants. | ) ) ) ) | |

**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**

Plaintiff Stephen Corbezzolo ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by MGP Ingredients, Inc. ("MGP" or the "Company"), as well as media and analyst reports about the Company, and the Company's press releases and conference call transcripts. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     This is a securities class action on behalf of all persons who purchased the common stock of MGP between February 27, 2019 and February 25, 2020, inclusive (the "Class Period"), against MGP and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 ("1934 Act"), including the Company's Chief Executive Officer ("CEO"), President and director, Augustus C. Griffin, and its Chief Financial Officer ("CFO"), Vice President of Finance and Controller, Brandon M. Gall.

2.     MGP purports to be a leading producer and supplier of premium distilled spirits and specialty wheat protein and starch food ingredients. Distilled spirits include premium bourbon and rye whiskeys and grain neutral spirits, including vodka and gin. MGP is also a top producer of high-quality industrial alcohol for use in both food and non-food applications. On the food ingredients side of the business, MGP is the largest U.S. supplier of specialty wheat proteins and starches.

3.     Beginning in 2015, MGP embarked on a new strategy in its whiskey line of business. Instead of selling the Company's whiskey as an unaged new distillate, which was then

barreled and aged by MGP's customers, the Company started storing significant amounts of barreled distillate that it could later sell as aged whiskey. After four years of aging, the Company was expected to commence selling this aged whiskey in 2019 – which analysts and investors eagerly anticipated as tapping a new market demand. MGP stated that it expected its four-year-old whiskey to fetch three times the price of unaged whiskey and was looking to lock in customers to long-term contracts to place that inventory.

4.    At the start of the Class Period, February 27, 2019, the Company announced its fiscal year 2018 ("FY18") financial results and its outlook for fiscal year 2019 ("FY19"), including FY19 net sales growth in the mid-single-digit percentage range, operating income growth of 15%-20%, and earnings per share ("EPS") guidance of $2.55-$2.65. Defendants stated that the Company was on track for strong growth due to its ready-to-sell aged whiskey inventory and "higher-than-expected" customer demand. Defendants told investors that the Company had *already* begun to reap significant benefits from its aged-whiskey strategy, claiming that MGP had "already transacted" and entered into contracts for the sale of aged whiskey on favorable terms and that past and ongoing transactions had laid the foundation for favorable sales throughout the year, stating in pertinent part:

> [Griffin:]   *As a result of sales already transacted and ongoing discussions with customers in the craft segment, multinational and national brand owners as well as the export market, we are confident that we have visibility to the aged sales we need to deliver against this year's guidance*.
>
> *    *    *
>
> [S]ales of aged whiskey will be a key driver of our growth in '19. *We have started contracting that. We have started transacting it*. . . . *[W]e feel very confident that we have visibility to the aged sales we need to deliver the guidance this year"* . . . .[1]

---

[1]    Emphasis has been added throughout unless otherwise noted.

5.     Defendants' statements concerning the Company's current business and financial condition were materially false and misleading when made because defendants failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     MGP had not completed any significant sales of its four-year-old aged-whiskey inventory;

(b)     the Company had been unable to sell its aged whiskey at the price premium represented to investors;

(c)     a glut of aged whiskey inventory and shifts in consumer behavior had lowered the value of the Company's aged whiskey inventory and materially impaired its ability to negotiate significant sales on favorable contract terms; and

(d)     in light of the foregoing, the Company's FY19 financial forecast lacked a reasonable basis and was materially misleading.

6.     Then, on May 1, 2019, the Company announced its first quarter 2019 ("1Q19") financial results, including "lighter" than consensus results due to "lower volumes" in sales of aged whiskey.  Defendants attributed the disappointing results to order timing and assured investors that the orders would be fulfilled during the second quarter of 2019 ("2Q19").  Defendants once again claimed that MGP was experiencing favorable demand and pricing trends and "confidently confirm[ed]" the Company's guidance for the remainder of the year, stating in pertinent part:

> [Griffin:]   *[W]e are very confident in the plan we have to sell [aged whiskey]* . . . *. That is our lever to make sure we deliver our annual guidance*.  And we're comfortable that both the volume demand and pricing is there for us to be able to use that lever to deliver on it.

7.     On this news, the price of MGP stock declined nearly 23%, from a close of $87.87 per share on April 30, 2019, to a close of $67.79 per share on May 1, 2019.  However, the price of MGP stock remained inflated by defendants' misrepresentations concerning MGP's whiskey sales,

- 3 -

the purported ongoing demand trends and their false assurances that the Company was on track to achieve its forecasted financial results.

8.     On July 31, 2019, the Company announced weak 2Q19 financial results, again due to poor sales of aged whiskey.  Defendants affirmed their guidance of net sales growth in the mid-single-digit percentage range, but reduced guidance for operating income growth to 10%-20% from 15%-20%.  Griffin, however, stated that defendants remained confident that MGP's aged whiskey sales would increase, stating in pertinent part:

> *[W]e remain confident in both the long-term demand for and the value of this inventory* and expect to see a significant increase in sales of aged whiskey over the remainder of the year.

9.     Again, defendants Griffin and Gall told investors that the aged whiskey sales missed due to some transactions failing to close at the end of 2Q19, but assured investors they expected a "significant increase" in sales over the remainder of the year.  Defendants in fact claimed that MGP had *already* received purchase orders for *12%* of the forecasted sales for the rest of the year, stating in pertinent part:

> [Griffin:]    We continue to see a diverse group of customers for our aged whiskey, and *our visibility to when those sales will be finalized improves throughout the year.  We are off to a good start to the back half of the year, having already recorded actual sales or received purchase orders for about 12% of our projected sales of aged whiskey for the remainder of the year. Additionally, we are in active, ongoing discussions with specific customers for another approximately 60% of those projected sales*.

10.     Following the disclosure of these poor results and the reduction in MGP's FY19 financial guidance, the Company's stock price declined more than 25%, from a close of $67.14 per share on July 30, 2019, to a close of $49.99 per share on July 31, 2019.  However, the price of MGP stock remained inflated by defendants' misrepresentations concerning MGP's whiskey sales, the purported ongoing demand trends and their false assurances that the Company was on track to achieve its revised financial forecast.

11.     On October 31, 2019, the Company again announced disappointing third quarter 2019 ("3Q19") financial results due to poor whiskey sales.  Defendants blamed the failure to transact aged whiskey on customer delays and "funding issues."  Nonetheless, defendant Griffin claimed that MGP remained on track to achieve its revised FY19 guidance, stating in pertinent part:

> "While we are certainly behind where we would like to be at this point in the year, **we are off to a strong start to the fourth quarter, and we are confident in our line of sight to the sales required to deliver against our full year guidance**."

12.     Defendants Griffin and Gall told investors that they were "**now seeing** the type of demand we anticipated when we initiated this investment" – *i.e.*, in 2015.  Defendant Griffin once again reiterated his confidence and visibility into sales for the remainder of the year based on specific, completed transactions, ongoing demand and pricing trends, stating in pertinent part:

> **We are confident in our line of sight to those sales [of aged whiskey] as we have either transacted sales or are in advanced discussions with specific customers for specific inventories for those required sales**.

13.     Following these disclosures, the Company's stock price declined nearly 12%, from a close of $48.49 per share on October 30, 2019, to a close of $42.89 per share on October 31, 2019.  However, the price of MGP stock remained inflated by defendants' misrepresentations concerning the Company's aged whiskey sales, the purported ongoing demand trends and their false assurances that the Company was on track to achieve its FY19 financial forecast.

14.     On January 17, 2020, the Company pre-announced its preliminary FY19 results, significantly missing the guidance defendants had reiterated with just two months to go in FY19.  The Company **missed its EPS guidance by as much as $0.55**, reporting an expected $2.20-$2.30 in EPS against guidance of $2.55-$2.75.  Shockingly, the Company experienced a net sales **decline of 4%** year-over-year, rather than growth in the mid-single digit percentage range, and an operating income **decline of 9%** year-year-over, rather than the 10%-20% growth represented to investors.

Defendant Griffin finally acknowledged that the disappointing results were the product of defendants' inability to transact on MGP's aged whiskey inventory as they had represented to investors, stating in pertinent part:

> "***The shortfall versus our previously communicated guidance is the result of us ultimately being unsuccessful in transacting a large portion of the aged whiskey sales we had forecast for the fourth quarter***" . . . .

15.     Defendants stated that the Company was conducting additional analysis to understand the market into which they previously claimed to have visibility in order to improve predictability, with defendant Griffin stating in pertinent part:

> "***[T]his shortfall is disappointing, particularly given the line of sight we believed we had to these aged sales . . . . We are currently conducting additional analysis to better understand the aged whiskey market, and, going forward, we will continue to refine our strategies and tactics to improve the sales predictability and management of this important piece of our business***."

16.     Analyst and investor reaction to these disclosures was decisive.  For example, on January 17, 2020, SunTrust's Robinson Humphrey downgraded MGP stock and slashed its price target to $55 from $80, noting that the Company "***doesn't seem to have sold any of its fully aged inventory in 2019***."

17.     Following the pre-announcement of MGP's FY19 results, the price of MGP stock declined more than 27%, from a close of $52.78 per share on January 16, 2020 to a close of $38.18 per share on January 17, 2020.

18.     On February 11, 2020, MGP announced the departure of defendant Griffin as of May 21, 2020, and his replacement as CEO, board member David J. Colo.

19.     Then, on February 26, 2020, the Company announced its finalized FY19 financial results, confirming its earlier pre-announcement that it had fallen "***significantly short of . . . guidance***" due to its failure to sell aged whiskey during the fourth quarter of 2019.  Defendant Griffin revealed that aged whiskey sales had declined year over year and that the Company had

failed to secure the contracts it had previously highlighted to investors. Griffin stated that aged whiskey sales were "unpredictable" and that the Company had reduced its expectations for aged whiskey sales going forward. On this news, the price of MGP stock declined from a close of $31.80 per share on February 25, 2020 to a close of $28.42 per share on February 26, 2020. This represented a *67% price decline* from the stock's Class Period high of $88.06 per share, causing MGP investors to suffer millions of dollars in losses and economic damages under the federal securities laws.

## JURISDICTION AND VENUE

20.     Jurisdiction is conferred by 28 U.S.C. § 1331 and § 27 of the 1934 Act. The claims asserted herein arise under §§ 10(b) and 20(a) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because MGP is a Kansas corporation, maintains its headquarters in this District, and the acts complained of took place in this District.

22.     In connection with the acts and conduct alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail and interstate wire and telephone communications.

## PARTIES

23.     Plaintiff Stephen Corbezzolo, a Kansas citizen, purchased MGP common stock as described in the attached certification and was damaged thereby.

24.     Defendant MGP Ingredients, Inc., a Kansas corporation, is headquartered in Atchison, Kansas, and its stock trades on the NASDAQ Global Select Market ("NASDAQ") under the symbol "MGPI."

25.     Defendant Augustus C. Griffin is CEO, President and a director of the Company. On February 11, 2020, MGP announced the departure of defendant Griffin from the CEO position as of May 21, 2020.

26.     Defendant Brandon M. Gall is the current CFO, Vice President of Finance and Controller of the Company.  He assumed the position of CFO upon the departure of his predecessor in April 2019.

27.     Defendants Griffin and Gall are collectively referred to herein as the "Individual Defendants."

## CONTROL PERSONS

28.     As officers and controlling persons of a publicly held company whose common stock is traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to promptly disseminate accurate and truthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, markets, management, earnings, and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's common stock would be based upon truthful and accurate information.  The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

29.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports, and other communications complained of herein, and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their membership on MGP's Board of Directors and/or executive and managerial positions with MGP, each of the Individual Defendants had access to the adverse undisclosed information about

the Company's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about MGP and its business or adopted by the Company materially false and misleading.

30.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases, and other public statements pertaining to the Company during the Class Period.  Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.  Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

31.     The Company and the Individual Defendants are liable as participants in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of MGP common stock by disseminating materially false and misleading statements and/or concealing material adverse facts.  The scheme: (i) deceived the investing public regarding MGP's business, operations, management, and the intrinsic value of MGP's common stock; and (ii) caused plaintiff and other members of the Class (defined herein) to purchase MGP common stock at artificially inflated prices.

**SUBSTANTIVE ALLEGATIONS**

32.     On February 27, 2019, the Company issued a press release announcing its financial results for the fourth quarter of 2018 ("4Q18") and FY18, which beat the Company's FY18 guidance, and announced its guidance for FY19.  The press release stated that the Company was well positioned for strong growth in FY19 based on existing demand and pricing trends, in

particular due to its aged whiskey inventory, which was now sufficiently mature to sell at premium prices after four years in the barrel.  The press release stated in pertinent part:

- Consolidated net sales [in 4Q18] increased 18.9% to $104.9 million . . . .

\*       \*       \*

- Consolidated operating income in [FY18] increased 16.9% to $50.1 million . . . .

\*       \*       \*

### 2019 and Long-Term Guidance

\*       \*       \*

- 2019 net sales growth is projected in the mid-single-digit percentage range versus 2018 . . . .

\*       \*       \*

- The Company's estimate of growth in operating income in 2019 is 15% to 20% off of the higher than expected 2018 results.

\*       \*       \*

- Earnings per share are forecasted to be in the $2.55 to $2.65 range.

### Conclusion

"***Both of our business segments continue to benefit from favorable consumer trends, and our strategic plan has us well positioned to fully capture the potential these trends offer***. . . .  We increased our aging whiskey inventory to $76.4 million . . . .  ***We are confident that our strategy and investments have us well positioned, and will provide us the resources we need, to deliver strong growth in 2019 and beyond***," concluded Griffin.

33.     Following the report of the Company's 4Q18 and FY18 financial results, the Company held a conference call for analysts and investors hosted by defendant Griffin.  During the call, defendants reiterated the Company's FY19 guidance and stated that the Company was seeing "higher-than-expected" demand for aged whiskey and was already progressing with sales,

which had laid the foundation for robust sales growth in FY19, as reflected in the following

exchange between defendant Griffin and a stock analyst:

> [Griffin:]       *Due to the sustained robust growth of the American Whiskey category, we continue to see strong demand for aged whiskey as customers seek to fill inventory gaps driven by higher-than-expected consumer demand*. Throughout the year, we continue to leverage limited sales of aged whiskey to support our existing partnerships and attract new customers for our new distillate products.

*       *       *

> [Griffin:]      2019 marks the next phase of our deployment of this inventory.  We will begin selling both more aged whiskey and older aged whiskey.  *We will continue to work with our current and prospective customers and are pleased with our progress implementing this initiative.  As a result of sales already transacted and ongoing discussions with customers in the craft segment, multinational and national brand owners as well as the export market, we are confident that we have visibility to the aged sales we need to deliver against this year's guidance*.

*       *       *

> [Analyst:]    I wanted to ask about the guidance for 2019 and specifically the commentary around this is the year where we're going to start to see some more meaningful deployment of aged whiskey. . . .

> [Griffin:] . . . As I said, 2019 is really the next phase of this deployment. . . . [S]ales of aged whiskey will be a key driver of our growth in '19.  *We have started contracting that.  We have started transacting it*.  In terms of how we'll fall out over the year, we will try to provide color on that, much as we did with the fourth quarter when we said the vast amount was due to new distillates.  So we'll try to provide color on what's driving our revenue growth. . . . *[W]e feel very confident that we have visibility to the aged sales we need to deliver the guidance this year, and it will continue to be a driver of our growth going forward in future years*.

*       *       *

> [Analyst:]       And if I look at your guidance for '19, . . . is it fair to say that . . . covers part of what you've contracted for so far but does not include all . . . of the class of 2015 inventory?

> [Griffin:]       *It includes us selling the aged whiskey we need to deliver our guidance*. . . .  And so as opposed to focusing on sweeping out the warehouse of all 4-year-old, that wouldn't be prudent.  So we will judge the market, use it judiciously, *use it to make sure we deliver the guidance* and get them – if pricing is still great and we can sell more, we will.  But we're not going to focus on

- 11 -

emptying the warehouse at all costs just to do that.  So we'll constantly look at the market.  ***We feel confident we have the levers, both for this year and future years, to continue to drive that growth***.

34.     The representations in ¶¶ 32-33 by defendants concerning the Company's current business and financial condition, including its sales of four-year-old aged whiskey and its forecasted financial results, were materially false and misleading when made because defendants failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them:

(a)     MGP had not completed any significant sales of its four-year-old aged-whiskey inventory;

(b)     the Company had been unable to sell its aged whiskey at the price premium represented to investors;

(c)     a glut of aged whiskey inventory and shifts in consumer behavior had lowered the value of the Company's aged whiskey inventory and materially impaired its ability to negotiate significant sales on favorable contract terms; and

(d)     in light of the foregoing, the Company's FY19 financial forecast lacked a reasonable basis and was materially misleading.

35.     On May 1, 2019, the Company issued a press release announcing disappointing financial results for 1Q19.  The press release stated that MGP's 1Q19 financial results were "lighter" than consensus.  While sales increased 1.3% to $89.1 million, gross profit decreased 12.1% to $16.7 million and consolidated operating income decreased 18.1% to $8.5 million. Defendants blamed the weak results on the "timing" of certain sales.

36.     Following these disclosures, the price of MGP stock declined nearly 23%, from a close of $87.87 per share on April 30, 2019 to a close of $67.79 per share on May 1, 2019, on abnormally high volume of more than 1.35 million shares traded.

37.     However, the stock price remained inflated by defendants' misrepresentations concerning the Company's current business and financial condition, including its sales of aged whiskey and its forecasted financial results, which were materially false and misleading when made because defendants failed to disclose the true facts that were known to defendants or recklessly disregarded by them, as set forth in ¶ 34 above.  For example, the Company's press release issued in connection with its 1Q19 results claimed that the results were not indicative of poor demand trends and reassured investors that the Company remained on track to achieve its FY19 guidance, stating in pertinent part:

> "Our results for the quarter are lighter than we would have liked and reflect both order timing and headwinds to our business.  ***However, we do not believe they are the result of any changes to underlying consumer trends or our position in the market***," said Gus Griffin . . . .  "***We have reviewed our outlook for the remainder of the year and are confidently confirming our previous guidance***."

> \*     \*     \*

> ***"Aged sales reflect lower volumes but higher pricing as we transition from selling lighter aged whiskey inventory to older whiskey inventory.  We expect both parts of our brown goods business to return to growth over the remainder of the year as a result of stronger demand and continued strong pricing***," continued Griffin.

> \*     \*     \*

> MGP is confirming the following guidance for fiscal 2019:

> • 2019 sales growth is projected in the mid-single-digit percentage range versus 2018 . . . .

> \*     \*     \*

> • The Company's estimate of growth in operating income in 2019 is 15% to 20% off of the higher than expected 2018 results.

> \*     \*     \*

> • Earnings per share are forecasted to be in the $2.55 to $2.65 range.

38.     On May 1, 2019, following the Company's report of its 1Q19 results, the Company held a conference call for analysts and investors hosted by defendants Griffin and Gall.  During

the call, defendants attributed the weak results to timing issues, but reassured investors that those orders would be fulfilled during 2Q19. Defendants also claimed that demand remained strong and that the Company was on track for robust earnings growth in FY19, as reflected in the following exchange between defendant Griffin and an analyst:

> [Griffin:]   [O]ur results were lighter than we would have liked. Our results for this quarter reflect both headwinds to our business and customer order timing. ***However, we do not believe they are the result of any changes in underlying consumer trends or our position in the market. As a result and after a detailed review of our outlook for the remainder of the year, we are confidently confirming our previous annual guidance***.
>
> *       *       *
>
> [Griffin:]   ***We continue to see strong demand and pricing for our products and are confident in our ability to deliver against our annual guidance***.
>
> *       *       *
>
> [Analyst:]   [D]oes that also tie into – I know a big tranche of what was put away 4 years ago occurred in the second quarter. So does that in part say we're holding back on selling that until it gets to full aged and there's more to come kind of in 2Q and beyond that?
>
>      [Griffin:]   Yes. First of all, we are very confident in the plan we have to sell that. And as we've mentioned in the past, we don't give a number of how much we're going to sell. ***That is our lever to make sure we deliver our annual guidance. And we're comfortable that both the volume demand and pricing is there for us to be able to use that lever to deliver on it*** . . . . So we're very comfortable that this aged whiskey will fill out over the year. We talked about the ramp-up accelerating. And we're very comfortable and confident that it will ramp up over the year as we planned.

39.     On June 28, 2019, SunTrust Robinson Humphrey issued an analyst report after travelling to roadshows with defendants, titled "Recovering from 1Q Hangover; Highlights from Travel with Management," which reported on defendants' meetings with investors and conveyed that, based on the meetings, guidance was conservative and the shortfall that had occurred in 1Q19 as a result of sales timing would boost 2Q19 results. The report stated in pertinent part:

We recently travelled with CEO Gus Griffin and CFO Brandon Gall of MGPI to meet with investors.  We came away from the meetings encouraged that 1) **the issues that tripped up 1Q have not carried over into 2Q** . . . .

                *     *     *

[W]e continue to believe that the company could have posted $3-$4 in EPS in 2019 if it chose to monetize its entire available inventory **and it still should easily exceed the current guidance in our opinion**. . . .

**1Q Results Not Likely to Create 2Q Hangover**:

                *     *     *

MGPI has not seen any cutbacks in orders from existing customers like it saw in 2Q18 . . . .  **This implies that the company should face a highly favorable comp for whiskey sales in the current quarter** . . . .  [W]e expect aged whiskey sales to accelerate as the first major tranche of inventory was not put away until 2Q15 (meaning it didn't hit maturity until 2Q19).

40.      On July 31, 2019, the Company issued a press release announcing financial results for 2Q19 that were below street expectations – again due to poor sales of aged whiskey. Defendants stated they remained confident that whiskey sales would increase over the remainder of the year and affirmed 2019 sales growth guidance in the mid-single-digit percentage range, but reduced guidance for operating income growth to 10%-20% from 15%-20% (while increasing EPS guidance to $2.55-$2.75 from $2.55-$2.65, which they attributed to a lower expected effective tax rate).

41.      Following these disclosures and the reduction in MGP's FY19 financial guidance, the price of MGP stock declined more than 25%, from a close of $67.14 per share on July 30, 2019 to a close of $49.99 per share on July 31, 2019, on abnormally high volume of more than 2.9 million shares traded.

42.      However, the stock price remained inflated by defendants' misrepresentations concerning the Company's current business and financial condition, including its sales of aged whiskey and its forecasted financial results, which were materially false and misleading when

made because defendants failed to disclose the true facts that were known to defendants or recklessly disregarded by them, as set forth in ¶ 34 above.  For example, the Company's press release issued in connection with its 2Q19 results claimed that the results were not indicative of poor demand trends, that there had been no erosion in the "value" of the Company's aged inventory, and that the Company was on track to achieve its unchanged sales growth forecast and its lowered, but still robust, operating income growth and EPS results for the year, stating in pertinent part:

> "**We remain confident in both the long-term demand for, and the value of this inventory, and expect to see a significant increase in sales of aged whiskey over the remainder of the year**.  However, we believe there is some possibility we might have difficulty completing transactions for all of our projected sales of aged whiskey by the close of the year," said Gus Griffin, president and CEO of MGP Ingredients.  "As a result, we are revising our guidance for the full year to include that possibility."
>
> *          *          *
>
> MGP is revising its guidance for fiscal 2019:
>
> - 2019 sales growth is projected in the mid-single-digit percentage range versus 2018.
>
> *          *          *
>
> - The Company's estimate of growth in operating income in 2019 is 10% to 20%.
>
> *          *          *
>
> - Earnings per share are forecasted to be in the $2.55 to $2.75 range inclusive of our new, lower projected effective tax rate.
>
> *          *          *
>
> "We remain confident in our long-term strategy and remain well-positioned against strong macro consumer trends," stated Griffin.  "We expect to report an improved performance over the back half of the year **and are off to a strong start in the third quarter**."

43.     On July 31, 2019, following the report of the Company's 2Q19 financial results, the Company held a conference call for analysts and investors, hosted by defendants Griffin and Gall.  Defendants again blamed the weak results on timing issues that would resolve later in the year based on demand and pricing trends that the Company was purportedly experiencing, and claimed that MGP had *already* achieved 12% of second half sales and was in ongoing negotiations with customers representing another 60% of those sales.  Defendants claimed that these existing demand trends ensured that MGP was on track to achieve its FY19 revised guidance, stating in pertinent part:

[Griffin:]  [O]ur operating income declined over 2% as sales of aged whiskey lagged our expectations.  Despite the slow start to the year for sales of aged whiskey, *we remain confident in both the long-term demand for and the value of this inventory and expect to see a significant increase in sales of aged whiskey over the remainder of the year*.  However, we believe there is some possibility we might have difficulty completing transactions for all of our projected sales of aged whiskey by the close of the year.  As a result, we are revising our guidance for the full year to include that possibility.

*      *      *

[Griffin:]    Sales of aged whiskey were down for the quarter and continue to trail last year. . . .  While sales of aged whiskey are below our expectations year-to-date, *we expect to see a significant increase in these sales over the remainder of the year.  Several orders failed to transact at the end of the quarter, highlighting both the longer-term demand and the inherent challenges in implementing this strategy.  As we progress through the implementation of this strategy, we are beginning to better understand the timing of demand and obstacles to transacting customers' orders*.

*      *      *

[Griffin:]    We continue to see a diverse group of customers for our aged whiskey, and our visibility to when those sales will be finalized improves throughout the year. *We are off to a good start to the back half of the year, having already recorded actual sales or received purchase orders for about 12% of our projected sales of aged whiskey for the remainder of the year.  Additionally, we are in active, ongoing discussions with specific customers for another approximately 60% of those projected sales.  This visibility, coupled with the continued solid trends of the category, gives us confidence for strong aged sales growth in the back half of the year*.

44.     Later, during the 2Q19 call, defendant Griffin engaged in the following exchange with a stock analyst, in which he claimed that MGP was "consistently" hitting its price premium of three times "or above" for its aged whiskey inventory, stating in pertinent part:

> [Analyst:]   Let's dive straight to aged.  Something clearly has happened from last quarter to this quarter in terms of you were very confident that the aged sales would enable you to get to the guidance to now you're adding a lower end to the guidance.  And clearly, the stock today tells you people don't believe that you can actually sell the product.  So I'm just trying to understand, best case scenario, . . . the company has been surprised by how complex this process is in terms of placing the barrels and it eventually will happen.  Worst-case scenario, customers are now pushing back and saying, "No, we're not going to pay 3x."  So is there any way to give us comfort in the near term that you're selling anything at 3x?  Or that it's more to the former versus the latter?
>
> [Griffin:]     Yes.  Great question and it's obviously, the crux of the matter.  So first of all, we're selling less aged this year so far.  We plan to sell more aged than last year.  We're selling less volumetric but we're selling older whiskey and **_we are consistently hitting our target, which is 3x.  We're consistently achieving to that or above that_**.

45.     On October 31, 2019, the Company issued a press release announcing that its financial results for 3Q19 were again below street expectations.  The Company stated that consolidated sales had decreased 4.6% to $90.7 million, consolidated gross profit had decreased 4.1% to $18.8 million, consolidated operating income had decreased 3.4% to $11.6 million, and EPS had decreased to $0.48 from $0.52.

46.     Following these disclosures, the price of MGP stock declined nearly 12%, from a close of $48.49 per share on October 30, 2019 to a close of $42.89 per share on October 31, 2019, on abnormally high volume of more than 445,000 shares traded.

47.     However, the stock price remained inflated by defendants' misrepresentations concerning the Company's current business and financial condition, including its sales of aged whiskey and its forecasted financial results, which were materially false and misleading when made because defendants failed to disclose the true facts that were known to defendants or

recklessly disregarded by them, as set forth in ¶ 34 above.  For example, the Company's press release issued in connection with its 3Q19 results claimed the weak results were again due to the timing of customer purchasers rather than overall demand and market trends and that MGP was "off to a strong start to the fourth quarter" and on track to "deliver against [its] full year guidance," stating in pertinent part:

> "While the overall American whiskey market remains robust, and our position within that market is still very strong, *timing and volatility of customers' orders continues to be a challenge this year*," said Gus Griffin, president and CEO of MGP Ingredients.  "*As in previous quarters this year, we saw forecasted orders delayed due to customer funding issues and their desire to delay purchasing as long as possible.*  These issues affected sales of both new distillate and aged whiskey inventory.  Despite this, we did have a very strong quarter for sales of aged whiskey, selling both more whiskey and older whiskey, as customers continue to need our inventory to launch new brands, fill holes in their inventory and support brand acquisitions.  We believe these customer needs will be ongoing.  *While we are certainly behind where we would like to be at this point in the year, we are off to a strong start to the fourth quarter, and we are confident in our line of sight to the sales required to deliver against our full year guidance.*"

> *       *       *

> **2019 Guidance**

> MGP is *confirming* the following guidance for fiscal 2019:

> - 2019 sales growth is projected in the mid-single-digit percentage range versus 2018.

> *       *       *

> - The Company's estimate of growth in operating income in 2019 is 10% to 20% . . . .

> *       *       *

> - Earnings per share are forecasted to be in the $2.55 to $2.75 range.

48.    On October 31, 2019, following the report of the Company's 3Q19 financial results, the Company held a conference call for analysts and investors to discuss the results, which was hosted by defendants Griffin and Gall.  On the call, defendants once again attributed poor whiskey

sales to timing issues and reiterated their confidence and visibility into sales for the remainder of the year, with defendant Griffin stating in pertinent part:

> [Griffin:]   While the overall American whiskey market remains robust and our position within that market is still very strong, ***timing and volatility of customers' orders continue to be a challenge this year.***  As in previous quarters this year, we saw forecasted orders delayed due to customer funding issues and their desire to delay purchasing as long as possible.  These issues have affected sales of both new distillate and aged whiskey inventory throughout the year. . . . ***While we are behind where we'd like to be at this point in the year, we're off to a strong start to the fourth quarter and we are confident in our line of sight to sales required to deliver against our full year guidance***.

> \*       \*       \*

> ***And while we experienced some delays earlier in the year, we are now seeing the type of demand we anticipated when we initiated this investment***.

> Our decision in 2015 to begin investing in putting away whiskey for aging was a key part of our long-term strategy.  While we are now starting to see the sales piece of this strategy ramp-up, it is important to understand the success of this strategy to date in terms of customer recruitment and financial return.  We believe our willingness to make significant strategic sales of lightly aged whiskey over the past few years has been instrumental in the development of our large and diverse customer base.  And we have achieved pricing in line with our 3x model as we have executed this strategy.

> Our aged whiskey inventory has us well positioned to meet future demand.  We now believe that other than what is reserved to support the future growth of our own brands, ***we will have very minimal 2015 vintage inventory remaining at the end of the year***.  We are also confident that any remaining inventory from that year will continue to increase in value.  As we have said all year, sales of aged whiskey will be the key determinant of our ability to deliver against our full year guidance and that continues to be the case.  ***We are confident in our line of sight to those sales as we have either transacted sales or are in advanced discussions with specific customers for specific inventories for those required sales***.

> \*       \*       \*

> While we are not where we would like to be in terms of year-to-date operating income growth, ***we are confident in our ability to achieve our full year guidance***.

> \*       \*       \*

> [Analyst:]   ***[T]he reiterating of the full year guidance . . . would imply a pretty nice double-digit increase in sales here in the fourth quarter, along with a really***

*nice increase in gross margin.  Just wondering what you can tell us, Gus, about your confidence in that*. . . .

[Griffin:]     Sure.  As oppose[d] to after the second quarter when we gave you the percentages by how much had been transacted and how much we're in discussions with and how much had been targeted with, we've progressed that quite a bit.  And so now we're really down to about a dozen customers that we're dealing with.  *We are in active ongoing discussions with them, specific customers for specific inventory to deliver those sales.  The majority of them, the vast majority of them are existing customers.  We don't need them all to come through.  And we feel -- so we feel very good about that outlook.  And that's why we're so confident in our ability to reconfirm our guidance*.

49.     On January 17, 2020, the Company pre-announced its preliminary FY19 results, which significantly missed the annual guidance that defendants had reiterated with *just two months left* in FY19.  The Company revealed it had achieved as much as $0.55 less in EPS than had been portrayed to investors, reporting expected EPS of $2.20-$2.30 against guidance of $2.55-$2.75.  It also revealed that net sales had *declined 4% annually* – far short of the forecast of growth in the mid-single-digit percentage range – and that operating income had *declined 9% annually* – falling far short of the expected 10%-20% growth.  The Company belatedly acknowledged that it needed to conduct "additional analysis" to accurately meet whiskey sales targets, despite its previous claims to have clear visibility based on ongoing demand trends, stating in pertinent part:

MGP. . . reported today that based on preliminary financial information, it expects to deliver the following financial results for the full year ended December 31, 2019:

*       *       *

- Operating income expected to be in the range of $46-$48 million.

*       *       *

- Earnings per share expected to be in the range of $2.20-$2.30.

"*The shortfall versus our previously communicated guidance is the result of us ultimately being unsuccessful in transacting a large portion of the aged whiskey sales we had forecast for the fourth quarter,*" said Gus Griffin, president and CEO of MGP Ingredients.

"***While this shortfall is disappointing, particularly given the line of sight we believed we had to these aged sales,*** we do not believe it reflects weakness in the overall American Whiskey category, our overall position in that market or the potential long-term value of our aged whiskey inventory. ***We are currently conducting additional analysis to better understand the aged whiskey market, and, going forward, we will continue to refine our strategies and tactics to improve the sales predictability and management of this important piece of our business.***"

\*     \*     \*

The Company expects to release its financial results before the market opens on Wednesday, February 26, 2020.

50. Analyst reaction was swift and severe. On January 17, 2020, SunTrust's Robinson Humphrey issued an analyst report, titled "Another Whiskey Sour; Lowering Rating to Hold on Weak Preliminary Results," which cut its rating on the stock to hold from buy and slashed its price target to $55 from $80. The report stated in pertinent part:

> ***We are lowering our rating on MGPI to Hold from Buy following significantly worse than expected preliminary 4Q19 results***. 4Q sales are expected to be $92M (down 12.6% YoY) well below our estimate of $126M. 4Q EPS is expected to be in the range of $0.69-$0.79 vs. our estimate of $1.09. We are reviewing our estimates but, admittedly, have little faith in our prior estimates following today's announcement.
>
> \*     \*     \*
>
> ***[W]e cannot fully understand how the company whittled away the opportunity over the past 12 months.*** We started with the belief that the company would start to sell its fully aged inventory (first put away in 2015) and easily exceed its $2.50-$2.60 EPS guidance. Instead it missed four consecutive quarters, including today's announcement, ***and doesn't seem to have sold any of its fully aged inventory in 2019.***

51. On January 21, 2020, Craig-Hallum Capital Group issued an analyst report downgrading MGP and slashing the price target for the stock. The report noted that MGP management had previously claimed that fourth quarter 2019 was off to a strong start before pre-announcing the negative results. The report stated in pertinent part:

**Year-End Guidance for 2019 Did Not Age Well. Management Reports Preliminary FY19 Numbers Below Analyst Estimates. Downgrading From BUY To HOLD And Reducing Price Target From $90 To $40.**

*     *     *

**Management issued a press release providing preliminary FY19 results which came in well below previously issued guidance and our estimates**. ***The shortfall came due to management's unsuccessful attempt at transacting a large portion of the aged whiskey sales they had previously forecasted for 4Q***. . . .  During the 3Q earnings call **management said it was off to a strong start to Q4 and thus reiterated guidance, implying double-digit growth for Q4.**  This was largely due to expected strength in a combination of sales in October and large sales anticipated in November and December adding they did not need all of its Nov/Dec sales to hit guidance.

(Emphasis in original and added.)

52.     Following this news, the price of MGP stock declined more than 27%, from a close of $52.78 per share on January 16, 2020, to a close of $38.18 per share on January 17, 2020, on massive trading volume of more than 2.4 million shares traded.

53.     On February 11, 2020, MGP announced the departure of defendant Griffin as of May 21, 2020 and his replacement as CEO, board member David J. Colo.

54.     Then, on February 26, 2020, the Company issued a press release announcing its finalized FY19 financial results, which missed guidance on all metrics.   Defendant Griffin attributed the "'disappoint[ing]'" results to the Company being "'unsuccessful in transacting a large portion of the aged whiskey sales . . . forecast for the fourth quarter.'"   The Company also announced that it was reducing its expectations for aged-whiskey sales going forward.   The press release stated in pertinent part:

2019 full year results compared to 2018 full year results

- ***Consolidated sales decreased 3.5%*** to $362.7 million, as a result of a decline in Distillery Products segment sales . . . .

- ***Consolidated gross profit decreased 8.5%*** to $76.5 million . . . .

- ***Consolidated operating income decreased 5.8%*** to $47.2 million . . . .

- ***EPS was $2.27 per share*** compared to $2.17 per share in 2018 . . . .

*       *       *

"***[D]ue to the inherent volatility in predicting sales of aged whiskey, and lower projections for the volumetric growth of the aged whiskey market, particularly in the U.S., we are reducing our forecast for predictable ongoing annual volume growth in our sales of aged whiskey***. The reduced outlook does not diminish our confidence in the long-term demand for our aged whiskey inventory but reflects the difficulty in forecasting aged whiskey sales in a particular year[,]" [stated defendant Griffin].

55.   On February 26, 2020, following the report of the Company's FY19 financial results, the Company held a conference call for analysts and investors to discuss the results, which was hosted by defendants Griffin and Gall. On the call, defendant Griffin stated that year-over-year sales of aged whiskey declined versus 2018 and once again attributed the miss to defendants' failure to transact a large portion of four-year-old whiskey sales during the fourth quarter of 2019. Griffin stated in pertinent part:

[Griffin:]   ***[W]e fell significantly short of our guidance due to us being unsuccessful in transacting a large portion of the aged whiskey sales we had forecast for the fourth quarter.***

*       *       *

[Analyst:]   I wanted to ask about the aged whiskey transactions that failed to materialize in the fourth quarter. Can you give us a little bit more color on the nature of those transactions . . . ?

*       *       *

[Griffin:]   [A]t the end of the third quarter, we've stated very confidently that we thought we were going to transact the required number of sales to hit our guidance for the full year. We said it was less than a dozen. . . . [M]ost of them were established customers. We were very confident we were further along in the transaction process and so forth. ***We learned some hard lessons in December***.

Some of the issues we've had in the past, funding came up, delays, people pushing off, things that we thought they were certainly going to – do happen. We had 1 sale just evaporate. Sometimes, we sell to a company who sells to somebody else. Some of the smaller customers might like to deal only with 1 supplier. ***So in***

- 24 -

*essence, it's a customer of a customer*. . . . [S]ince it was a customer of a customer, was that really a viable sale to begin with?  We certainly thought so.

And then . . . we had people put off because they'd found other temporary solutions. . . .

I think the key takeaway from that was we realized that there's continual things that we can't control, *and so . . . we are not going to include things that are unpredictable in our forecas*t.

56.     Following this news, the price of MGP stock declined from a close of $31.80 per share on February 25, 2020 to a close of $28.42 per share on February 26, 2020, or *11%*, on increased trading volume.  This represented a *67% decline* from the stock's Class Period high of $88.06 per share, causing MGP investors to suffer millions of dollars in losses and economic damages under the federal securities laws.

## ADDITIONAL SCIENTER ALLEGATIONS

57.     As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these defendants, by virtue of their receipt of information reflecting the true facts regarding MGP, their control over, and/or receipt and/or modification of MGP's allegedly materially misleading statements and/or their associations with the Company, which made them privy to confidential proprietary information concerning MGP, participated in the fraudulent scheme alleged herein.  The Individual Defendants were personally involved in the strategy to increase MGP's aged whiskey inventory and the negotiations to sell that inventory during the Class Period.   They held themselves out to the market as the persons most

knowledgeable about MGP's aged whiskey inventory and the pertinent demand and pricing trends impacting the Company's business.

## LOSS CAUSATION/ECONOMIC LOSS

58.     During the Class Period, as detailed herein, defendants made false and misleading statements about MGP's business and prospects and engaged in a scheme to deceive the market. This artificially inflated MGP's stock price and operated as a fraud or deceit on the Class.  Later, when defendants' prior misrepresentations and fraudulent conduct became apparent to the market, MGP's stock price fell precipitously, as the prior artificial inflation came out of the stock price over time.  As a result of their purchases of MGP common stock during the Class period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

59.     The market for MGP common stock was open, well developed, and efficient at all relevant times.  As a result of defendants' materially false and misleading statements and omissions as set forth above, the price of MGP common stock was artificially inflated during the Class Period. Plaintiff and other members of the Class purchased MGP common stock relying upon the integrity of the market price of MGP common stock and market information relating to MGP, and have been damaged thereby.

60.     At all relevant times, the material misrepresentations and omissions particularized in this complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class.  As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about MGP's business, prospects, and operations.  These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of MGP and its business, prospects, and operations, thus causing the Company's common stock to

be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of MGP common stock was removed and the price of MGP common stock declined dramatically, causing losses to plaintiff and the other members of the Class.

## NO SAFE HARBOR

61.     MGP's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with Generally Accepted Accounting Principles, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. 15 U.S.C. § 78u-5(b)(2)(A).

62.     The defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of MGP who knew that the FLS was false. None of the historic or present tense statements made by defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICABILITY OF PRESUMPTION OF RELIANCE:
## FRAUD ON THE MARKET

63.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's common stock traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

(e)     plaintiff and other members of the Class purchased MGP common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

64.     At all relevant times, the market for MGP common stock was efficient for the following reasons, among others:

(a)     As a regulated issuer, MGP filed periodic public reports with the SEC; and

(b)     MGP regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases on major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## CLASS ACTION ALLEGATIONS

65.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased MGP common stock during the Class Period (the "Class"). Excluded from the Class are defendants and their immediate families, the

officers and directors of the Company at all relevant times, members of their immediate families, and defendants' legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

66.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  As stated in MGP's quarterly report filed on Form 10-Q on October 31, 2019, MGP had more than 17 million shares of stock outstanding as of October 25, 2019.  This stock was owned by hundreds or thousands of persons.

67.     There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a)     whether the 1934 Act was violated by defendants;

(b)     whether defendants omitted and/or misrepresented material facts;

(c)     whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether defendants knew or recklessly disregarded that their statements were false and misleading;

(e)     whether the price of MGP common stock was artificially inflated; and

(f)     the extent of damage sustained by Class members and the appropriate measure of damages.

68.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

69.     Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation.  Plaintiff has no interests which conflict with those of the Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of § 10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

71.     Plaintiff incorporates ¶¶ 1-70 by reference.

72.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

73.     Defendants violated § 10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)     employed devices, schemes, and artifices to defraud;

(b)     made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of MGP common stock during the Class Period.

74.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for MGP common stock.  Plaintiff and the Class would not have purchased MGP common stock at the prices they paid, or at all, had they been

aware that the market prices were artificially and falsely inflated by defendants' misleading statements.

75.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of MGP common stock during the Class Period.

## COUNT II

### For Violation of § 20(a) of the 1934 Act
### Against All Defendants

76.     Plaintiff incorporates ¶¶ 1-75 by reference.

77.     The Individual Defendants acted as controlling persons of MGP within the meaning of § 20 of the 1934 Act.  By virtue of their positions and their power to control public statements about MGP, the Individual Defendants had the power and ability to control the actions of MGP and its employees.   MGP controlled the Individual Defendants and its other officers and employees.  By reason of such conduct, defendants are liable pursuant to § 20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff, and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Awarding plaintiff and the members of the Class damages and interest;

C.     Awarding plaintiff's reasonable costs, including attorneys' fees; and

D.     Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands a trial by jury.  Pursuant to Local Rule 40.2(a), Plaintiff designates Kansas City, Kansas as the place of trial.

DATED:  February 28, 2020

STUEVE SIEGEL HANSON LLP
NORMAN E. SIEGEL, D. Kan. #70354
RACHEL E. SCHWARTZ, KS #21782


            /s/ Rachel E. Schwartz
          RACHEL E. SCHWARTZ

460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:  816/714-7100
816/714-7101 (fax)
siegel@stuevesiegel.com
schwartz@stuevesiegel.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
DANIEL J. PFEFFERBAUM
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
dpfefferbaum@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Attorneys for Plaintiff